IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SARAH C. SCOTT,

       Plaintiff,

v.                                         CASE NO. 1:09-cv-00102-MP-AK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

_____/

# O R D E R

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act

(Act) for review of a final determination of the Commissioner of Social Security (Commissioner)

denying Plaintiff's applications for disability insurance benefits (DIB) and supplemental security

income benefits (SSI) filed under Titles II and XVI of the Act. Upon review of the parties'

briefs and the administrative record, the Court concludes that the findings of fact and

determinations of the Commissioner are supported by substantial evidence, and therefore the

decision of the Commissioner must be affirmed.

## A.    <u>PROCEDURAL HISTORY</u>

Plaintiff filed applications for DIB and SSI on October 4, 2005, alleging a disability onset

date of September 21, 2001, due to neck and back injuries, depression, bipolar disorder, and

obsessive compulsive behavior. An administrative law judge (ALJ) conducted a hearing on

December 20, 2007, and entered an unfavorable decision on February 6, 2008. (R. 20). The

Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the

final decision of the Commissioner. (R. 7). This action followed.

B.     **FINDINGS OF THE ALJ**

The ALJ found that Plaintiff had the following severe impairments: status post reversal gastric bypass, arthralgia, affective disorder, anxiety-related disorder, personality disorder, and a history of polysubstance dependence (in remission), but that these impairments, singly or in combination, did not meet the listing requirements. While the ALJ found that Plaintiff had medically determinable impairments that could reasonably cause some degree of pain and limitation, he did not find the intensity, persistence, and limiting effects reported by Plaintiff to be entirely credible. The ALJ's findings regarding Plaintiff's physical impairments are not at issue before this Court; Plaintiff's claims focus on the ALJ's findings regarding the effects of her mental impairments. *See* Doc. 12.

The ALJ determined that Plaintiff experienced mild limitation regarding daily living activities; mild difficulty with social functioning; and moderate difficulty with concentration, persistence, or pace. Specifically, the ALJ cited Plaintiff's testimony regarding her activities and lifestyle, Plaintiff's demeanor and ability to relate to him at the hearing, and medical reports, in particular the opinions of consulting psychologists. Dr. Peterson concluded that Plaintiff could meet the "mental demands of appropriate concentrated task-oriented activity." (R. 29). Dr. Buffone found that Plaintiff had only mild mental limitations. Further, Dr. Register determined that Plaintiff's severe mental impairments would not limit her ability to understand, recall, and perform routine activities. Because Dr. Register reviewed Plaintiff's complete medical record and provided detailed support for her conclusions, the ALJ accorded the greatest weight to Dr. Register's opinion. Dr. Abeles, an examining psychologist, found that Plaintiff's mental impairments would likely limit her ability to obtain or maintain employment. Although the ALJ

accorded significant weight to Dr. Abeles' opinion as an examining doctor, he noted that, unlike Dr. Register, Dr. Abeles did not review Plaintiff's entire medical record. Finally, the ALJ noted that Plaintiff's history of treatment for her mental impairments was relatively short, and she reported improvements when taking her medications. In fact, it was when Plaintiff was no longer taking her medication that she attempted suicide. Based on the medical reports, the ALJ determined that Plaintiff was limited to "unskilled work in a low stress environment." (R. 30).

The ALJ found that Plaintiff was not capable of performing her past relevant work as a licensed practical nurse. (R. 30). The ALJ determined, however, that Plaintiff was capable of obtaining and maintaining employment other than her past relevant work. The ALJ noted that transferability of job skills was not material to the disability determination because the Medical-Vocational Guidelines did not support a finding that Plaintiff is disabled. The ALJ relied on the testimony of a vocational expert, who stated that, based on Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could perform work as an office helper, a folder, or a mail clerk. The vocational expert also testified that there are significant numbers of jobs for each position in the national economy. Thus, based on the Medical-Vocational Guidelines and vocational expert testimony, the ALJ found that Plaintiff was not disabled during the relevant time period.

## C.    ISSUES PRESENTED

Plaintiff argues that the ALJ erred in formulating the hypothetical posed to the vocational expert because he omitted Plaintiff's mental residual functional capacity limitations, and instead relied on the severity finding from Defendant's Psychiatric Review Technique forms. The government responds that the ALJ properly assessed Plaintiff's mental residual functional

capacity, and properly relied on the testimony of the vocational expert in determining that

Plaintiff could perform other work in the economy.  The government argues that the ALJ's

residual functional capacity determination included specific reference to Plaintiff's moderate

limitations in concentration, persistence, or pace.  Thus, the government contends that the

hypothetical presented to the vocational expert was consistent with Plaintiff's limitations.

**D.**     **STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The

Commissioner's decision must be affirmed if it is supported by substantial evidence and the

correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir.

1997).  Findings of fact by the Commissioner which are supported by substantial evidence are

conclusive. 42 U.S.C. § 405(g).  Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).

"Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th

Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a

preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations

omitted).  The court may not reweigh the evidence or substitute its judgment for that of the

Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if

substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815

F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is

contrary to the Commissioner's findings, where there is substantially supportive evidence of the

Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d 227, 230

(11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact,

his conclusions of law are not presumed valid. <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th

Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to

provide the reviewing court with an adequate basis for it to determine whether proper legal

principles have been observed requires reversal. <u>Id.</u> (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or

mental impairment must be so severe that claimant is not only unable to do his previous work,

"but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.

Plaintiff bears the burden of establishing a severe impairment that keeps him from performing

his past work. If Plaintiff establishes that his impairment keeps him from his past work, the

burden shifts to the Commissioner at step five to show the existence of other jobs in the national

economy which, given Plaintiff's impairments, Plaintiff can perform. Chester v. Bowen, 792

F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If

the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work

suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). It is

within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision

with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir.

1990).

E.      **SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

        The relevant medical records concern Plaintiff's mental condition prior to the ALJ's

February 6, 2008, decision, and after the onset date of September 21, 2001. Plaintiff entered

Madison County Hospital on October 6, 2003, for treatment after an attempted suicide by an

overdose of medication. (R. 181). On November 15, 2003, Plaintiff sought treatment at the

Madison County Hospital for complaints of a nervous breakdown. (R. 173). She was diagnosed

as having an "anxiety reaction with depression reaction." (R. 174). Although Plaintiff requested

that she be "Baker Acted," the hospital discharged her to the care of her husband. (R. 173).

Plaintiff was treated by Shands at the University of Florida on February 23, 2005, for attempting

to commit suicide by carbon monoxide poisoning. (R. 189). During a consultation interview,

Plaintiff stated that she had stopped taking her medication two months prior to her suicide

attempt and that the medication had been helping her. (R. 191). Plaintiff also reported that she

had been experiencing several stressors, including financial problems and a divorce from her

husband of fifteen years. (R. 191). The record indicates that Plaintiff was treated by Putnam

Behavioral Healthcare in September and October 2005, but she did not attend any further

appointments.  (R. 315-320).

Dr. Legum, a licensed psychologist, evaluated Plaintiff on February 9, 2006.  (R. 250-253).  She reported that Plaintiff has a history of addiction and other issues "which appear to be related to Borderline Personality Disorder."  (R. 252).  Dr. Legum also noted that Plaintiff may be sober, but she had not attended any support groups or recovery programs.  (R. 252-253).  Further, she stated that Plaintiff "continues self-mutilation in the form of scratching scabs on her body, which may indicate that she has the personality disorder beyond the alcohol and drug dependence."  (R. 252).  Finally, Dr. Legum indicated that Plaintiff was oriented, she had an integrated thought process, and her memory was intact.  (R. 252).

In a Psychiatric Review Technique form completed on April 19, 2006, Dr. Peterson reported that Plaintiff had the following functional limitations: no restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no limitations stemming from episodes of decompensation, each of extended duration.  (R. 285, 295).  In a Mental Residual Functional Capacity Assessment form dated April 19, 2006, he concluded that Plaintiff had moderately limited ability to maintain attention and concentration for extended time, to complete a normal work schedule without interruptions due to her psychological symptoms, and to set realistic goals or make her own plans.  (R. 297-298).  However, Dr. Peterson stated that Plaintiff "continues to function adequately in a full range of routine [activities of daily living within] her physical [and] motivations/volitional parameters; she may likewise be considered still able to sustain the mental demands of appropriate concentrated task-oriented activity at this time."  (R. 299).

On November 16, 2006, Dr. Buffone reported in a Psychiatric Review Form that Plaintiff has the following functional limitations: mild restriction of activities of daily living; mild difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace. (R. 380, 390). Additionally, Dr. Buffone stated that Plaintiff presents "no evidence of a severe mental impairment at this time." (R. 392).

Dr. Abeles examined Plaintiff on October 10, 2007, to assess her mental status as to her level of functioning. (R. 423). She diagnosed Plaintiff with Boderline Personality Disorder, and she noted that Plaintiff has a history of polysubstance abuse, in full remission. (R. 425). Dr. Abeles found that Plaintiff's "current level of functioning would probably preclude her from obtaining or maintaining employment in that she would have a great deal of difficulty in coping with the stresses inherent in any position." (R. 425).

In a Psychiatric Review Technique form dated October 12, 2007, Dr. Register reported that Plaintiff had the following functional limitations: mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and one or two episodes of decompensation, each of extended duration. (R. 434, 444). In a Mental Residual Functional Capacity Assessment form completed on October 12, 2007, Dr. Register further noted that Plaintiff has the following moderate limitations: ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, and ability to complete a normal work schedule without interruption from her symptoms. (R. 448-450). However, she stated that Plaintiff's "mental status does not support significant problems with concentration or memory." (R. 450). Finally, Dr. Register noted that Plaintiff "is capable of understanding, recalling, [and] carrying out

[simple, routine tasks] over a normal workday/workweek."  (R. 450).

## F.   <u>SUMMARY OF THE ADMINISTRATIVE HEARING</u>

Plaintiff was 49 years old at the time of the hearing.  (R. 491).  She has completed

training to work as a licensed practical nurse, and she has past relevant work experience at a

nursing home.  (R. 491).  Plaintiff stated that she stopped working in September 2001 after

having complications from gastric bypass surgery.  (R. 491).  She attempted to work as a nurse

for an agency in 2005, but she was unable to perform the job functions and the employer issued a

"do not return."  (R. 491).  Plaintiff reported that she could not complete her job within eight

hours.  (R. 492).  Specifically, Plaintiff stated that she "fell down a lot;" had difficulty bending

and reaching; and experienced pain in her neck, upper back, hips, and hands.  (R. 492).  Plaintiff

also testified that she would "zone out a lot," losing track of what she was doing and staring into

space for five or ten minutes several times per shift.  (R. 492).  Plaintiff related that she has

suffered from anxiety and depression since 2001, causing her to be unhappy and to have a lack

of energy.  (R. 493).  In 2001, Plaintiff found herself becoming irritable with patients and co-

workers, and she felt as though her behavior was impacting her ability to be a "good nurse."

(R.493).  She would "blow up" at co-workers at least once a week.  (R. 494).  When she stopped

working in September 2001, Plaintiff remained in bed for approximately three to four months

after her surgery.  (R. 494).  She stated that "[i]t was all [she] could do to get up and walk to the

bathroom."  (R. 494).  Plaintiff reported that her mental health was declining at the same time,

but she had not yet been diagnosed with bipolar disorder.  (R. 494).  She may have been taking

antidepressants at that time, but her mental health did not "get really bad" until 2002.  (R. 494).

She related that being bipolar means that she becomes depressed to the point of being suicidal,

she gets irritated with other people, she gets aggressive, she "laugh[s] and say[s] things that don't make sense, and [she] want[s] to go running around and driving." (R. 494). Plaintiff reported that she spends most of her days in bed, but she watches television, reads, washes dishes, and vacuums. (R. 494-495). She is generally only out of bed between the hours of 11 a.m. and 2 p.m. (R. 495).

The ALJ then heard testimony from Susan D. Roche, a vocational rehabilitation consultant. (R. 495). Ms. Roche reported that, based on her vocational expertise and her review of the vocational materials, she had written an opinion that Plaintiff had performed past relevant work as a licensed practical nurse, with a physical demand of "medium." (R. 496).

The ALJ posed the following hypothetical to Ms. Roche:

> A hypothetical individual of the claimant's age, education and past work experience, who would require simple low stress unskilled jobs with one, two, and three step instructions. Could lift and carry no more than 10 pounds, and frequently 20 pounds. Occasionally could stand six hours and sit six hours. Should avoid pushing and pulling motions with her lower extremities. Can perform pushing and pulling motions with her upper extremities within the aforementioned weight restrictions. She can perform activities requiring bilateral and manual dexterity. She should avoid hazards in the workplace. As far as postural activities, no climbing, occasional balancing, stooping, crouching, kneeling, and crawling. And because of psychologically based symptoms is unable to perform skilled work, but has the ability to perform simple, one, two, or three step job instructions. Do you have an opinion whether such an individual with that given profile could perform any of the claimant's past work?

(R. 497). Ms. Roche testified that the ALJ's hypothetical individual could not perform Plaintiff's past relevant work, but that there are unskilled jobs which this individual could perform. (R. 498). Ms. Roche explained that the hypothetical individual could work as a helper, folder, or mail clerk. (R. 498). She further testified that these occupations exist in significant numbers in both the state of Florida and the national economy. (R. 498). The ALJ then asked

Ms. Roche to assume that the hypothetical individual had the further limitation of requiring the option to sit or stand while working. (R. 498). Ms. Roche stated that this additional limitation would not change her answer to the initial hypothetical. (R. 498-499). Further, Ms. Roche reported that moderate limitations in concentration, persistence, and pace would not change her answer, but marked limitations would preclude the individual from performing any of these jobs. (R. 499).

## G.    DISCUSSION

At the fifth step of the evaluation process, the ALJ must determine whether a Claimant, based on her residual functional capacity, age, education and work experience, can adjust to other work in the national economy. 20 C.F.R. § 404.1520(a)(4). The ALJ may make this determination by reliance upon the Medical Vocational Guidelines or by utilizing the services of a vocational expert. Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004).

In order for the expert's testimony to constitute substantial evidence to support the ALJ's findings with regard to this point, the ALJ must pose a hypothetical which includes all of the Claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). However, the ALJ is only required to include in the hypothetical those limitations he finds severe. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985).

In the present case, Plaintiff argues that the ALJ's hypothetical was incomplete because it did not include her moderately limited abilities to: (1) maintain attention and concentration for extended periods, and (2) and complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. However, as the ALJ found, the record reflects

that the limitations included in the hypothetical were supported by the reports of Dr. Register and

Dr. Peterson.[1]  Contrary to Plaintiff's argument, the ALJ included these restrictions in his

hypothetical by asking the vocational expert to assume that the hypothetical individual was

limited to "simple low stress unskilled jobs with one, two, and three step instructions."  (R. 497).

Further, the ALJ asked the vocational expert to assume that the hypothetical individual had

"moderate limitations in maintaining concentration, persistence and pace."  (R. 499).

       Plaintiff confuses Part I of the Residual Functional Capacity Assessments prepared by

Dr. Register and Dr. Peterson with Part III, which is the relevant part of the form addressing the

functional mental limitations.  Although Dr. Register and Dr. Peterson noted in Part I of the form

that Plaintiff had "moderate" limitations with her ability to maintain attention and concentration

for extended periods and in her ability to complete a normal workday or workweek without

interruptions from her symptoms, both Dr. Register and Dr. Peterson indicated that Plaintiff

could perform work involving simple instructions.  Dr. Peterson reported that Plaintiff may be

"considered still able to sustain the mental demands of appropriate concentrated task-oriented

activity." (R. 299).  Similarly, Dr. Register noted that Plaintiff "is capable of understanding,

recalling, [and] carrying out [simple, routine tasks] over a normal workday/workweek."  (R.

450).  The functional limitations set forth by these doctors would limit a claimant to simple,

unskilled, low stress work, involving simple instructions – the precise limitation included in the

hypothetical posed to the vocational expert.  By including such a limitation in his hypothetical,

---

[1]The limitations included in the hypothetical were also supported by the findings of Dr. Legum, who reported that Plaintiff "was oriented, her thought process integrated, and both recent and remote memory was intact."  (R. 25).

the ALJ recognized and considered any moderate limitation in Plaintiff's abilities regarding

concentration, persistence, and pace. Accordingly, to the extent that Plaintiff argues that the ALJ

was required to include these functional mental limitations in his hypothetical, the Plaintiff's

argument fails because the ALJ did include in the hypothetical the functional limitations

assessed by these doctors.

The opinion of a doctor examining a claimant one time need not be afforded great weight

under the treating physician's rule. See Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)

(noting that rule giving great weight to physician's opinion does not apply where physician has

only examined patient one time). Even if his or her opinion were to be accorded greater weight,

the ALJ may discount in whole or in part even a treating physician's opinion if good cause exists

to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986); Lewis v. Callahan, 125

F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991),

(citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)). An ALJ need only state with

particularity the weight he assigns different medical opinions and explain his reasons for doing

so. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Caulder v. Bowen, 791 F.2d

872, 880 (11th Cir. 1986); Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992).

Although the ALJ considered all of the medical opinions regarding Plaintiff's abilities, he

accorded the "greatest weight" to the opinion of Dr. Register. The ALJ stated that Dr. Abeles'

opinion deserves significant weight "due to her examining status, [but] it must be noted that she

did not have the entire medical folder for review." (R. 29). However, the ALJ further noted that,

unlike Dr. Abeles, Dr. Register reviewed Plaintiff's complete medical record and she provided

detailed support for her conclusions. Because the ALJ fully explained his reasons for according greater weight to Dr. Register's opinion, any suggestion by Plaintiff that the ALJ erred in this regard is without merit.

In sum, the ALJ properly considered Plaintiff's mental abilities and posed a hypothetical to the vocational expert that included all of her functional mental limitations. Thus, because it was based on a proper and complete hypothetical, the vocational expert's opinion that there were a significant number of jobs in the economy that Plaintiff could perform constitutes substantial evidence in support of the ALJ's determination that Plaintiff was not disabled. See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

Accordingly, it is

**ORDERED AND ADJUDGED:**

That the decision of the Commissioner denying benefits is AFFIRMED.

**DONE AND ORDERED** this _8th_ day of July, 2010

_____*s/Maurice M. Paul*_____
Maurice M. Paul, Senior District Judge